**SO ORDERED.**

**SIGNED this 23 day of September, 2013.**



_____
A. Thomas Small
United States Bankruptcy Court Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

WM SIX FORKS, LLC,                    CASE NO. 12—05854—8—ATS
                                      CHAPTER 11
    DEBTOR.

_____

ORDER

The matter before the court is its order directing WM Six Forks, LLC ("debtor") to appear and show cause why its case should not be dismissed or sanctions imposed for failure to remit the appropriate quarterly fee for the second quarter of 2013. At issue is whether a credit bid, exercised by a secured creditor pursuant to § 363(k) of the Bankruptcy Code, is considered a "disbursement" for purposes of calculating the quarterly fee due under 28 U.S.C. § 1930(a)(6). A hearing on the matter was held on September 5, 2013, in Raleigh, North Carolina.

The debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on August 12, 2012. As of the

1

petition date, the debtor owned a mixed-used building in Raleigh, North Carolina, known as Manor Six Forks, which included 298 residential apartments and 14,000 square feet of retail space (the "project"). Prior to the petition date, on July 22, 2008, the debtor executed a building loan agreement in favor of Capmark Finance Inc. ("Capmark Finance") in the original principal amount of $36,587,800.00 (the "loan agreement"), which was secured by a deed of trust and assignment of rents, profits and income encumbering the project as well as a security agreement and financing statement covering "collateral . . . now or thereafter located on the premises of, relate to, or used in connection with the construction, financing, repair, ownership, management, and operations of [the project.]" (collectively, the "security instruments"). On August 14, 2012, Lenox Mortgage XVII LLC ("Lenox Mortgage"), successor-by-assignment to Capmark Finance,[1] filed a proof of claim, Claim No. 1, in the amount of $39,027,860.00.

---

[1] The loan agreement, security instruments, and all rights and interests thereunder, were subsequently assigned by Capmark Finance to Berkadia Commercial Mortgage LLC ("Berkadia") in a series of assignments dated December 9, 2009, and December 16, 2009. Berkadia, in turn, assigned its rights and interests under the loan agreement and security instruments to the Secretary of Housing and Urban Development ("HUD") on September 20, 2011. On July 9, 2012, HUD assigned all rights, title and interests under the loan agreement and security instruments to Lenox Mortgage.

The debtor and Lenox Mortgage entered into a purchase and sale agreement, dated December 10, 2012 (the "purchase agreement"), which provided for the sale of the project to Lenox Mortgage for a total purchase price of $37,100,000.00. The purchase agreement entitled Lenox Mortgage "to exercise its credit bid right pursuant to section 363(k) of the Bankruptcy Code on account of its allowed secured claim in an amount not less than $39,027,860.00 . . . ."

On February 15, 2013, the court entered an order confirming the debtor's plan of liquidation dated December 10, 2012, as amended on February 5, 2013, which provided for the sale of the project pursuant to §§ 363(b) and 1123(a)(5)(D) of the Bankruptcy Code following court-approval of the purchase agreement and certain bidding procedures (the "confirmation order"). The confirmation order provided, in accordance with the terms of the purchase agreement, for the transfer of the project to Lenox Mortgage in full satisfaction of its allowed claim. The confirmation order also approved the procedures and deadline by which qualified bids were to be submitted and scheduled a hearing for the approval of the sale of the project, which was held on March 21, 2013.

There were no other qualified bids, and on March 27, 2013, in accordance with the confirmation order and the purchase agreement, the court entered an order approving sale of the

project to Lenox Mortgage in exchange for a credit bid of $37,100,000.00. On April 11, 2013, the debtor closed on the sale of the project, which was purchased by Deancurt Raleigh, LLC ("Deancurt"), the successor-by-assignment to Lenox Mortgage under the purchase agreement. At the closing and pursuant to the purchase agreement, confirmation order and order approving the sale, the project was transferred to Deancurt in consideration of the credit bid in the amount of $37,100,000.00.

On August 1, 2013, the debtor filed its quarterly fee statement and its post-confirmation report for the quarter, which ended June 30, 2013. The debtor, in this post-confirmation report, listed total disbursements for the second quarter in the amount of $111,821.65, resulting in a quarterly fee of $975.00 that was subsequently paid by the debtor on August 2, 2013. Under the section of the post-confirmation report entitled "Sale of Property," the debtor stated the "[p]roject was sold to Lenox Mortgage XVII LLC in April of 2013."

On August 8, 2013, and on the motion of the bankruptcy administrator, the court entered an order directing the debtor to appear and show cause currently before the court for its failure to pay the correct quarterly fee for the second quarter. In her motion, the bankruptcy administrator contends that the debtor owes the maximum quarterly fee of $30,000.00 for the

4

second quarter, based on the credit bid submitted by Lenox Mortgage in the amount of $37,100,000.00.

Section 1930(a)(6) of Title 28 of the United States Code provides that debtors shall pay quarterly fees to the United States Trustee "in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first." 28 U.S.C. § 1930(a)(6). The quarterly fees are calculated on a graduated scale that is based on the "disbursements" made during a given quarter:

> The fee shall be $325 for each quarter in which disbursements total less than $15,000; $650 for each quarter in which disbursements total $15,000 or more but less than $75,000; $975 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,625 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,950 for each quarter in which disbursements total $225,000 or more but less than $300,000; $4,875 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $6,500 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $9,750 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $10,400 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $13,000 for each quarter in which disbursements total $5,000,000 or more but less than $15,000,000; $20,000 for each quarter in which disbursements total $15,000,000 or more but less than $30,000,000; $30,000 for each quarter in which disbursements total more than $30,000,000. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

28 U.S.C. § 1930(a)(6).[2] "Disbursements" is not defined by § 1930(a)(6), its legislative history or the Bankruptcy Code. See, e.g., Walton v. Jamko, Inc. (In re Jamko, Inc.), 240 F.3d 1312, 1314 (11th Cir.2001); Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.), 266 F.3d 523, 525 (6th Cir. 2001)(stating that "Congress has failed to define 'disbursements' anywhere in either the bankruptcy code or its legislative history[] . . . ."). Because quarterly fees are assessed on a graduated scale based upon aggregate disbursements in a given quarter, the definition of that term is critical.

The parties dispute the meaning and the scope of the term "disbursements" in § 1930(a)(6). The bankruptcy administrator contends that disbursements should be afforded a broad interpretation to include the successful credit bid of $37,100,000.00 exercised by Lenox Mortgage pursuant to § 363(k) at a public sale and should be included for purposes of calculating the appropriate quarterly fee pursuant to § 1930(a)(6). A broad interpretation, according to the bankruptcy administrator, is consistent with the plain meaning of the term

---

[2] The assessment of quarterly fees in the three judicial districts in North Carolina, none of which are part of the United States Trustee Program as defined in 28 U.S.C. § 581, are governed by 28 U.S.C. 1930(a)(7), which provides that "the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection." 28 U.S.C. § 1930(a)(7).

6

as well as the purpose and legislative history of § 1930(a)(6). The debtor, on the other hand, disputes that the credit bid exercised by Lenox Mortgage falls within the definition of "disbursements" upon which the quarterly fee is calculated. In support of its position, the debtor relies upon the closing statement, which indicates that the debtor did not receive nor did it make payments totaling $37,100,000.00 in exchange for the project or in partial satisfaction of the existing debt owed to Lenox Mortgage.

The term "disbursement" is defined as "[t]he act of paying out money, commonly . . . in settlement of a debt or account payable." Black's Law Dictionary 530 (9th ed. 2009); see Merrian-Webster's Dictionary & Thesaurus 225 (2007) (defning disbursement as "the act of disbursing" or "funds paid out"; Id. (indicating that the term "disburse" is synonymous with "expend" and "distribute"); Perrin v. United States, 444 U.S. 37, 42 (1979)("A fundamental canon of statutory construction is that . . . words will be interpreted as taking their ordinary, contemporary, common meaning.").

Sections 326(a) and 543(2), two unrelated sections of the Bankruptcy Code, shed light on the issue before the court. Section 326(a), which sets the limits placed on the compensation of chapter 7 and chapter 11 trustees, is based on "moneys disbursed." 11 U.S.C. § 326(a). The use of the term "moneys" in

§ 326(a) circumscribes the word "disbursed" and suggests that disbursement means something more than monies. See, e.g., In re Lan Assocs. XI, L.P., 192 F.3d 109, 116 (3d Cir. 1999) (concluding that the value of a credit bid may not be included in a trustee's compensation base under § 326(a)); U.S. Trustee v. Tamm (In re Hokulani Square, Inc.), 460 B.R. 763, 777-78 (9th Cir. BAP 2011)(concluding that the plain meaning of the phrase "moneys disbursed" present in § 326(a), which is used to calculate the cap placed on a trustee's compensation, cannot include secured creditors' credit bids).  Section 543, setting forth the obligations of a custodian, utilizes the term "disbursement" in subsections (a) and (c). See 11 U.S.C. § 543(a), (c).  Section 543(a) prohibits a custodian, with knowledge of the commencement of the debtor's case, from "mak[ing] any disbursement from, or take any action in the administration of, property of the debotor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody or control of such custodian . . . ." Id. § 543(a).  Plainly, the prohibition with respect to disbursements by a custodian present in § 543(a), which includes disbursement of "offspring," is broader than the disbursement of money. Id.

    Disbursements, for purposes of calculating the quarterly fee under § 1930(a)(6), has been interpreted broadly to include

all payments, whether made directly by the debtor or by a third party on the debtor's behalf.  See, e.g., U.S. Trustee v. Hays Builders, Inc. (In re Hays Builders, Inc.), 144 B.R. 778, 780 (W.D. Tenn. 1992) ("The ordinary, plain meaning of the statutory language requires that all disbursements, whether direct or through a third party, be included in the calculation of fees due . . . under § 1930(a)(6)."); U.S. Trustee v. Wernerstruck, Inc. (In re Wernerstruck, Inc.), 130 B.R. 86, 89 (D.S.D. 1991) (holding that prepayments the debtor made to a lender pursuant to modified settlement agreement that reduced the balance of loan and accrual of interest were considered disbursements for purposes of calculating the quarterly fee); In re Warren Oil Props., LLC, No. 02-02273-5-ATS, at 4-6 (Bankr. E.D.N.C. Nov. 12, 2003) (holding that payments made by third parties on behalf of debtors are disbursements notwithstanding the debtors' lack of control over the funds); In re Huff, 270 B.R. 649, 653 (Bankr. W.D. Va. 2001) (concluding that payments the debtor made in connection with a transaction to refinance an existing debt, which was satisfied by the proceeds from a new loan, was a disbursement for purposes of 1930(a)(6)); In re Pars Leasing, Inc., 217 B.R. 218, 220 (Bankr. W.D. Tex. 1997) (holding that "disbursements" for purposes of calculating the quarterly fee included payments made by third parties on the debtor's behalf); In re Flatbush Assocs., 198 B.R. 75, 78 (Bankr. S.D.N.Y. 1996)

(characterizing the rent paid by the debtor's subtenants directly to the debtor's landlord as "disbursements" for purposes of calculating the quarterly fee).  Although not defined, "Congress intended to include in the calculation of UST fees all payments made by a Chapter 11 debtor, from whatever source and to whomever paid." Huff, 270 B.R. at 650; see St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525, 1534 (9th Cir. 1994) (addressing whether "disbursements" included payments made directly to a secured creditor by a third-party from the sale proceeds of property serving as security and holding that "a plain language reading of the statue shows that Congress clearly intended 'disbursements' to include *all* payments from the bankruptcy estate."); but see U.S. Trustee v. Tamm (In re Hokulani Square, Inc.), 460 B.R. 763, 777-78 (9th Cir. BAP 2011) (concluding that that the plain meaning of the phrase "moneys disbursed" present in § 326(a), which is used to calculate the cap placed on a trustee's compensation, cannot include secured creditors' credit bids).

   The congressional purpose underlying the United States Trustee Program and quarterly fees lend additional support to a broad reading of the term "disbursements" in § 1930(a)(6).[3]

---

[3]To fund the United States Trustee Program, Congress created the United States Trustee System Fund, see 28 U.S.C. §§ 586(a), 589a(a), a significant portion of which is made up of the

10

Section 1930(a)(6) was established by Congress as a "revenue-generating mechanism" operating to fund the United States Trustee Program by "imposing the costs . . . on 'the users of the bankruptcy system, not the taxpayer.'" Jamko, 240 F.3d at 1315 (characterizing quarterly fees imposed by § 1930(a)(6) as "akin to a user tax." (citations omitted)); In re Cash Cow Servs. of Fla., LLC, 249 B.R. 33, 37 (Bankr. N.D. Fla. 2000) (finding quarterly fees to be "akin to a tax" and noting that "[t]ax laws are to be construed in a light most favorable to the taxing authority as a matter of public policy." (citation omitted)).

> Section 363(k) of the Bankruptcy Code provides:
>
> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k). With respect to credit bidding, the Supreme Court recently recognized that "[t]he ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price[]" by "enabl[ing] the [secured] creditor to purchase the collateral for what it

---

quarterly fees assessed to chapter 11 debtors pursuant to § 1930(a)(6). Jamko, 240 F.3d at 1315.

11

considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan." RadLax Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2070 n.2, 182 L. Ed. 2d 967 (2012).  Credit bidding "allows the secured creditor to bid for its collateral using the debt it is owed to offset the purchase price [,]" which "ensures that, if the bidding at the sale is less than the amount of the claim the collateral secures, the secured creditor can, if it chooses, bid up the price to as high as the amount of its claim." Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC, No. 3:11-CV-00053, 2012 WL 3542527, at *7 n.14 (W.D.Va. Aug. 16, 2012).  A secured creditor's purchase of assets, that are subject to its lien, by credit bid "is the equivalent of a cash purchase." Spillman Inv. Grp., Ltd. v. Am. Bank of Tex. (In re Spillman Dev. Grp., Ltd.), 401 B.R. 240, 253 (Bankr. W.D. Tex. 2009) (citations omitted); see Lexington Coal Co. v. Miller, Buckfire, Lewis Ying & Co. (In re HNRC Dissolution Co.), 340 B.R. 818, 824-25 (Bankr. E.D. Ky. 2006). As observed by the court in Lexington Coal, "[c]learly 11 U.S.C. § 363(k) treats credit bids as a method of payment-the same as if the secured creditor has paid cash and then immediately reclaimed that cash in payment of the secured debt." 340 B.R. at 824-25.

Similar to the credit bid in the instant case, courts have found a wide range of payments to constitute disbursements for purposes of calculating quarterly fees, including those where sale proceeds are utilized to retire existing debt. See, e.g., See In re FPD, LLC, No. 10-30424(PM), at 9 (Bankr. D. Md. May 26, 2011) Huff, 270 B.R. at 652-53; Munroe, 2011 WL 1157542, at *1. In Huff, the court concluded that the plain meaning of the term "'disburse' . . . seems to sweep broadly enough to cover the refinance transaction . . . since money was paid out to retire a debt." Id. at 651. The court held that retiring existing debt from funds obtained through the new loan, although merely a substitution of debt that did not result in any benefit to the estate, was a disbursement because the existing loan "was retired by a payment made by the debtor or on behalf of the debtor and it was made to a creditor." Id. at 653. Similarly, the court in Munroe held that the satisfaction of underlying debt from the proceeds realized from several sales of real property serving as security were disbursements falling under the purview of § 1930(a)(6). 2011 WL 1157542, at *1. The court opined as follows:

> The distribution of the proceeds from the sale of the properties went to pay obilgations that were the sole legal obligation of the debtor. The court concludes that these payments are disbursements that fall within the statute in question, and thus must be included in the computation of quarterly fees.

Id. (relying on Jamko, Huff and In re Central Copters, 226 B.R. 447 (Bankr. D. Mont. 1998), to observe that "[a]ll disbursements, whether made directly or through a third party, are included in the calculation [of quarterly fees]." Munroe, 2011 WL 1157542, at *1 (citation omitted)). In FPD, the court required that the quarterly fees "be paid from all sales approved[,] . . . including [p]roperties purchased by Wells Fargo through credit bids . . . ." No. 10-30424(PM), at 9.[4]

Based on the foregoing and utilizing a broad interpretation of the term "disbursements" under § 1930(a)(6), the court finds that the credit bid submitted by Lenox Mortgage is a disbursement and should be included in the calculation of the applicable quarterly fee. See FPD, No. 10-30424(PM), at 9. Accordingly, the quarterly fee owed for the second quarter is $30,000.00, $975.00 of which has been paid by the debtor.

**END OF DOCUMENT**

---

[4] Wells Fargo, the secured creditor in FPD, and the United States Trustee disagreed whether quarterly fees were payable on the properties purchased via the credit bid of Wells Fargo. No. 10-30424(PM), at 10. However and to facilitate entry of an order approving the sales, the debtor and Wells Fargo agreed to retain sufficient funds to pay the estimated quarterly fees on the properties purchased by credit bid. Id.